In re Gwendolyn PLOTKIN.

Sallie MAE and Student Loan Guarantee Foundation of Arkansas, Plaintiffs,

v.

Gwendolyn PLOTKIN, Defendant.

Bankruptcy No. 93–16271.
Adv. No. 93–6534.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Feb. 24, 1994.

Connie Meskimen, Little Rock, AR, for plaintiffs.

Jack Dickerson, Hot Springs, AR, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of the complaint to determine the dischargeability of a student loan on the grounds of hardship. The matter was called for trial on February 9, 1994, the plaintiffs appearing by Connie Meskimen, and the defendant appearing with her attorney, Jack Dickerson.

The Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under

any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(B) Excepting such debt from discharge under this paragraph will impose an undue hardship in the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B). In determining whether to discharge a student loan under this paragraph, the courts generally employ a three-prong test derived from *Higher Educ. Assist. Agency v. Johnson (In re Johnson)*, 5 Bankr.Ct.Dec. 532 (Bankr. E.D.Pa.1979), which looks to the debtor's present and future needs, the debtor's good faith, and whether the policies of the Bankruptcy Code are met. *But see In re Roberson*, 999 F.2d 1132 (7th Cir.1993) (declining to adopt the *Johnson* test but utilizing many of its facets). While the *Johnson* test should not be rigidly or mechanically applied, *see Andrews*, 661 F.2d 702, 704 (8th Cir.1981) (bankruptcy court must examine the facts and circumstances surrounding the particular bankruptcy), this Court will analyze the facts pursuant to the test described in *Johnson.*

■ The mechanical test focuses on the debtor's past and current financial resources, as well as future resources and prospects in light of the debtor's skills, educational level, employment record, and ability to obtain and retain employment. *In re Brown*, 18 B.R. 219, 223 (Bankr.D.Kan.1982). In addition, the reasonableness of debtor's expenses must be analyzed. *In re Andrews*, 661 F.2d 702 (8th Cir.1981). The primary question for a court is whether the debtor's future financial resources for the longest foreseeable period of time allowed for repayment of the loan will be sufficient to support the debtor (and dependents) at a subsistence or poverty standard of living as well as to fund repayment of the loan. If a subsistence level standard of living can be maintained while also repaying the loan, the courts generally will deny discharge of the debt.

■ The good faith test is based on the Bankruptcy Code policy of affording a fresh start to an honest debtor. The courts review the debtor's efforts to obtain employment, attempts to maximize income, minimize expenses, and the reasons for insolvency. For example, if the debtor was negligent or irresponsible in his or her efforts to minimize expenses, maximize resources, or secure employment, a court may deny a hardship discharge even though the mechanical test is met.

The third prong of the analysis is the policy test. This test looks to whether the dominant purpose of the bankruptcy was to avoid payment of the student loans and, secondly, whether the debtor derived a benefit from the education obtained through the loan. If the answer to either inquiry under the policy test is yes, discharge is generally denied.

■ Of course, it is the debtor's burden to demonstrate that debt should be discharged. *Boston v. Utah Higher Education Assistance Authority*, 119 B.R. 162 (Bankr.W.D.Ark. 1990). While the plaintiffs' arguments have some merit,[1] under the facts of this case, the Court finds that, on balance, the debtor has met her burden of proof such that the student loan is determined to be dischargeable.

■ The debtor is a thirty-three year-old female who suffers from severe osteoporosis, scoliosis, as well as anorexia, and has suffered gall bladder tumors. Although she is a full-time college student, the evidence indicates that it is unlikely that such education will greatly improve her prospects for future employment. Indeed, her testimony, as well as her college transcripts, indicate she has difficulty in meeting even the requirements of class attendance. Her physical condition presently reduces her ability to function fully, and will continue to do so in the future, such that holding full-time employment for any length of time is unlikely. Of course, poor health or a current medical condition is

---

1. The Court agrees with the arguments of the Student Loan Guarantee Foundation of Arkansas that debtors should first seek deferment or other administrative remedies available to them regarding student loans. Indeed, the Eighth Circuit noted that administrative remedies may yet be available to a debtor despite a finding that the student loan is nondischargeable. *Andrews*, 661 F.2d at 705 n. 5.

not itself sufficient to for making a determination of hardship. *See, e.g., Ford v. Tennessee Student Assistance Corp.*, 151 B.R. 135 (Bankr.M.D.Tenn.1993); *Ipsen v. Higher Education Assistance Foundation*, 149 B.R. 583 (Bankr.W.D.Mo.1992). However, this debtor's capabilities are sufficiently limited, and her physical condition sufficiently severe, that neither her physical condition nor employment prospects will improve. *Compare Kline v. United States*, 155 B.R. 762 (Bankr. W.D.Mo.1993) (medical condition would prevent steady employment); *Berthiaume v. Pennsylvania Higher Education Assistance Authority*, 138 B.R. 516 (Bankr.W.D.Ky. 1992).

The Court has also examined the debtor's income and expenses. Both debtor and her husband rely solely upon social security benefits to subsist. Debtor receives $466 per month, her husband slightly less. The expenses of both the debtor and her husband are minimal. The schedules indicate that both she and her husband minimize expenses and maximize their resources. Her school expenses are currently paid by the State as part of a rehabilitation program. Based upon these factors, the Court finds that the debtor cannot now, and in all probability cannot in the foreseeable future, subsist and fund repayment of the student loan.

The debtor's misfortunes are not of her own making, but stem primarily from her medical condition. Defendants' argument that the fact that debtor is a student, militates against discharge, would, in most instances carry great weight. However, the evidence in the case indicates that the state or other caretaker determined that such activity would serve a rehabilitative purpose such that it was suggested that she attend school. Accordingly, in this unique circumstance, the fact that debtor is an unemployed, full-time student does not indicate a lack of good faith.

Finally, the Court finds that the discharge of the student loan was not a dominant purpose in filing the bankruptcy case. The stu-

dent loan debt is $7,338 compared to a total debt[2] of nearly $85,000, approximately one-half of which consists of medical expenses. While the debtor may have received some benefit from the loan in the past and may receive some benefit in the future, any benefit is outweighed by the severe difficulty of her medical condition which will, by all accounts, in the long-term, deprive her of the means to employ the educational benefit.

Based upon these unique facts, the Court finds that the debtor has met her burden of demonstrating that the student loan debts held by defendants are dischargeable pursuant to Bankruptcy Code section 523(a)(8)(B).

**ORDERED** that the student loan is determined dischargeable in this bankruptcy case, pursuant to 11 U.S.C. § 523(a)(8)(B). A separate judgment will be entered.

**IT IS SO ORDERED.**

**2.** This is the total debt of both debtor and her co-debtor husband. The original schedules indicate that the plaintiff is solely or jointly liable on debts in the amount of over $50,000, of which, $32,000 are medical expenses. The debtors amended their schedules to add $18,000 of debt owed to other creditors, including the defendant herein. Again, other than the student loan, the majority of these additional debts are medical expenses.